UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MILES GUPTILL, | ) |
| *Plaintiff*, | ) |
| | ) Case No.: 1:22-cv-11-CLC-CHS |
| v. | ) |
| | ) Judge Collier |
| CITY OF CHATTANOOGA, and | ) |
| OFFICER JOEL GUNN (Individually | ) |
| and Official Capacity), | ) |
| *Defendants.* | ) |

## MEMORANDUM

Before the Court is a motion for summary judgment by Defendant Officer Joel Gunn. (Doc. 73). Plaintiff, Miles Guptill, has responded. (Doc. 84.) Defendant Gunn has replied. (Doc. 91.) This matter is ripe for review.

### I. BACKGROUND

On January 11, 2021, Plaintiff went to Erlanger Hospital in East Ridge, TN to receive treatment for ongoing mental health issues. (Doc. 85 at 1.) Plaintiff arrived at Erlanger Hospital crying and told the emergency room staff he was "at a low point." (Doc. 85 at 2.) According to Plaintiff, his statement was brought by a lack of sleep due to learning of his wife's infidelity. (Doc. 85 at 1–2.) Prior to January 11, 2021, Plaintiff was diagnosed with schizophrenia, chronic depression, bipolar disorder and post traumatic syndrome disorder. (Doc. 85 at 1–2.) Plaintiff also admittedly struggles with anger management. (Doc. 85 at 2.) The relevant altercation was captured through footage from Officer Gunn's body camera. The parties dispute many of the facts of the encounter. Because there is video footage of the event, the court must view the facts "in the light depicted by the videotape." *Green v. Throckmorton*¸ 681 F.3d 853, 859 (6th Cir. 2012).

However, where the facts of the video recording do not blatantly contradict Plaintiff's "entire version of the events' in material respects to each claim," the Court must still view the evidence in the light most favorable to Plaintiff, the nonmovant. *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 527 (6th. Cir. 2018) (quoting *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011).

The video begins with Plaintiff sitting on a bed inside Erlanger Hospital. (Doc. 76-3 at 13:00:03.) At this point, a nurse is attempting to explain to Plaintiff that a doctor has ordered medication that Plaintiff must take because of an "acute medical change."[1] (*Id.* 13:00:07–13:00:09.) The nurse tells Plaintiff that his "mind is not working right" so he is not in a position to make decision regarding his medications, but Plaintiff continues to express opposition[2] to taking the medication. (*Id.* at 13:00:18–13:00:43.)

A second nurse enters the room and attempts to explain why Plaintiff has to take the medication. (*Id.* at 13:00:45–13:01:00.) The two nurses, now both in the room with Plaintiff, move towards him, presumably to administer the medication to Plaintiff through a syringe. (*Id.* at 13:00:05–13:00:10.) Defendant Gunn and a Walden Security guard enter the room following the nurses.

At the time Defendant Gunn entered the room, one nurse had Plaintiff restrained as the other continued attempting to explain to Plaintiff why he had to take the medication. (*Id.* at 13:01:10.) Defendant Gunn and the Walden Security guard continued to move closer to Plaintiff,

---

[1] According to Plaintiff, he was hesitant to take the medicine because he "stopped taking drugs about a week prior to checking himself into the hospital and was attempting to avoid taking further drugs." (Doc. 84 at 2.)

[2] Plaintiff denies refusing to take the medicine. Even after viewing the video, the Court cannot say that Plaintiff's hesitancy was outright refusal. Accordingly, the Court will accept Plaintiff's characterization as true.

2

and all four men[3] attempted to physically restrain Plaintiff. (*Id.* at 13:01:12–13:01:19.) Plaintiff's left arm began to tense up as he continued expressing opposition to taking the shot. (*Id.* at 13:01:19–13:01:24.) Plaintiff then stepped over the bed to the other side of the room. (*Id.* at 13:01:26–13:01:29.) Plaintiff argues he stepped over the bed in order to "provide relief to his shoulder pain caused by his arm being twisted behind his back." (*Id.* at 13:01:27–13:01:29; Doc. 85 at 7.) When Plaintiff's feet touched the ground again, Defendant Gunn struck Plaintiff in the head and attempted to hold his head down. (Doc. 76-3 at 13:01:28–13:01:30.) One of the nurses told Defendant Gunn "don't do that" and to "step out" of the room. (*Id.* at 13:01:30–13:01:32.) Defendant Gunn continued attempting to restrain Plaintiff by alternating a hand on Plaintiff's neck and left arm. (*Id.* at 13:01:32–13:01:44.) Ultimately, Defendant Gunn left the room and began walking the hall outside of the room. Defendant Gunn can be heard telling someone outside the room "I punched him one time . . . ." (*Id.* at 13:02:04–13:04:06.) Plaintiff can be heard from inside the room questioning why Defendant Gunn hit him in the head and stating that he wanted the incident reported. (*Id.* at 13:01:58, 13:02:11–13:03:29.) Defendant Gunn then explains to another medical professional outside of the room that Defendant was being "combative" and he "hit him one time . . . to get him to stop resisting." (*Id.* at 13:03:40–13:03:50.) Defendant Gunn went to his vehicle to retrieve a notebook and returned to talk to the nurse who asked him to leave the room. Officer Gunn asked the nurse why he had a "problem" with Gunn's actions and the nurse stated it was hospital policy to "only strike if you fear for your life." (13:07:26–13:08:25.) The officer also stated that Plaintiff was restrained and that they were still in control. (13:08:05–13:08:10.).

---

[3] Both nurses in the room were also male.

Plaintiff filed his 42 U.S.C. § 1983 complaint against Defendants Gunn and the City of Chattanooga on January 11, 2022. (Doc. 1.) Plaintiff asserted causes of action for use of excessive force, malicious harassment, and common law assault and battery against Defendant Gunn. (Doc. at 1)

Defendant Gunn moved for summary judgment on September 15, 2023. (Doc. 73.) Plaintiff responded on October 20, 2023. (Doc. 84.) Defendant Gunn replied on November 3, 2023. (Doc. 91.) This matter is now ripe for review.

## II.  STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). In resolving a motion for summary judgment, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . ." *Celotex Corp.*, 477 U.S. at 323. "When reviewing a motion for summary judgment, the court generally must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). But where there is a videotape capturing the events in question, the court must view the facts "in the light depicted by the videotape." *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012). "[W]here the video does not tell the whole story in a material respect, or 'reasonable jurors could interpret the video evidence differently,' summary judgment is not

4

appropriate." *Hanson,* 736 F. App'x at 527. "The ultimate question, then, is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [the moving] party must prevail as a matter of law. *Id.*

## III. DISCUSSION

Defendant Gunn moves for summary judgment as to Plaintiff's claims for use of excessive force, malicious harassment, and common law assault and battery. Defendant Gunn also specifically argues that he is entitled to qualified immunity as to Plaintiff's § 1983 claim for excessive force. Plaintiff argues summary judgement is improper because there are genuine issues of material fact that must go to a jury to determine.

The Court will first examine Defendant Gunn's argument for qualified immunity as to Plaintiff's § 1983 use of excessive force claim. Then, the Court will address Plaintiff's Tennessee state law claims for malicious prosecution and common law assault and battery.

### A. 42 U.S.C. § 1983 Use of Excessive Force Claim

#### 1. Officer Gunn's Qualified Immunity Analysis

Defendant Gunn argues his motion for summary judgment should be granted because he is entitled to qualified immunity. (Doc. 74 at 7.) "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009.) An officer is entitled to qualified immunity if "(1) the officer[] did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992 (6th Cir. 2017). The test to determine whether an officer is entitled to qualified immunity must account for "the totality of the

5

circumstances' surrounding the officer's use of force." *Palma v. Johns*, 27 F.4th 419, 428 (6th Cir. 2022). "The use of force 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham*, 490 U.S. 386, 396 (1986)). Additionally, the district court retains the discretion to decide which prong of the analysis to begin with. *Pearson*, 555 U.S. at 236.

### a. Defendant Gunn did not exercise excessive force in attempting to restrain Plaintiff.

Plaintiff argues Defendant Gunn violated his Fourth, Eighth, and Fourteenth Amendment right to not be "subjected to excessive force by police." (Doc. 1 at 5–6.) Plaintiff argues that while he was "subdued, and in custody and defenseless, [Defendant Gunn] intentionally punched him in the face and the force used was excessive and unreasonable." (Doc. 1 at 5–6.) Plaintiff further argues Defendant's use of force was "calculated and intentional and not objectively reasonable considering all facts and circumstances." (Doc. 1 at 6.)

Defendant Gunn argues the Court should follow the guidance of the Court of Appeals for the Sixth Circuit from *Estate of Hill by Hill v. Miracle*, 853 F.3d 306 (6th Cir. 2017)[4]. Applying this test, Defendant argues Plaintiff was experiencing a medical emergency that rendered him incapable of making a rational decision under circumstances that posed an immediate threat of serious harm to himself or others, that some degree of force was necessary to ameliorate the immediate threat, and that the force used was no more than what was reasonably necessary under the circumstances. (Doc. 74 at 10–12.) Accordingly, Defendant Gunn submits he is entitled to summary judgment because Defendant cannot show he suffered a constitutional violation.

---

[4] Plaintiff argues that *Estate of Hill has* been called into question by other courts. (Doc. 84 at 13.) However, for the purpose of the pending motion, this Court will follow the test as outlined by the Court of Appeals for the Sixth Circuit.

The Supreme Court has stated, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard." *Graham*, 490 U.S. at 395. When the Plaintiff alleging excessive force has not committed a crime, was not resisting arrest, and was not directly threatening the officer, the court should ask:

> (1) was the person experiencing a medical emergency that rendered him incapable of making a rational decision under circumstances that posed an immediate threat of serious harm to himself or others,
> (2) was some degree of force reasonably necessary to ameliorate the immediate threat?
> (3) was the force used more than reasonably necessary under the circumstances (i.e., was it excessive)?

*Estate of Hill*, 853 F.3d at 314. "If the answers to the first two questions are 'yes,' and the answer to the third question is 'no,' then the officer is entitled to qualified immunity." *Id.* However, the *Estate of Hill* factors are non-exhaustive, and the Court must still consider the totality of the circumstances in reaching its decision. *Id.* With this guidance in mind, the Court will proceed to examine Plaintiff's claims as Fourth amendment violations to determine whether the *Estate of Hill* test is satisfied.

### i. Defendant Gunn could have objectively and reasonably believed Plaintiff was experiencing a mental health emergency that rendered him incapable of making a rational decision and posed an immediate threat of serious harm to himself or the other professionals in the room.

The first question is whether Plaintiff was experiencing a medical emergency that rendered him incapable of making a rational decision under circumstances that posed an immediate threat of serious harm to himself of others. *Estate of Hill*, 853 F.3d at 314.

Defendant Gunn argues Plaintiff was experiencing a medical emergency. First, Defendant Gunn argues that Plaintiff's deposition shows he was "very manic' when he arrived at the emergency room on January 11, 2021." (Doc. 74 at 11.) Defendant Gunn further states "Dr. Reuhland, a licensed physician at the hospital, executed a Certificate of Need after he arrived, stating that [Plaintiff] 'has a history of schizophrenia, and now has symptoms of acute psychosis. Disorganized thoughts put the patient and others at substantial risk of harm.'" (Doc. 74 at 11.) Defendant argues this Certificate of Need "shows that [Plaintiff] was incapable of making a rational decision under circumstances that posed an immediate threat of serious harm to himself or others." (*Id.*) As it relates to potential for harm, Defendant Gunn argues that when he interacted with Plaintiff:

> he was noncompliant with instructions from hospital staff and was physically resisting them. [Defendant Gunn] saw [Plaintiff] "raise his arms towards the center of his body with his fists clenched." There was a nurse in the room holding a syringe that could pose a threat to all of those in the room. [Plaintiff] "began pulling away" from [Defendant's] grasp [and] was able to break away from the nurse who held onto him and leap over the bed. [Defendant Gunn] attempted to keep hands on [Plaintiff] [but] [Plaintiff] "was able to grab [Defendant Gunn's] left wrist with both of his hands and pull [Defendant Gunn] aggressively towards him."

(Doc.74 at 11.) Defendant Gunn argues that Plaintiff posed a potential threat to all parties in the room based on his mental state and resistance to officials. (Doc 74 at 11–12.)

Plaintiff responds that he "was speaking coherently and calmly with the nurses" and "was acknowledged by the nurse conversing with him to not being combative." (Doc. 84 at 14.) Additionally, Plaintiff argues the bodycam footage "shows a patient who does not appear to be either in a medical emergency incapable of making a rational decision or an immediate threat of serious harm to himself or others." (Doc. 84 at 14.)

First, the Court notes that the parties' disagreement over the Certificate of Need is not central to resolving the pending question. Plaintiff argues Defendant Gunn cannot rely on the

8

Certificate of Need for support because he punched Plaintiff at 1:00 p.m. and the Certificate of Need was not issued until 2:59 p.m. (*See* Doc. 82 at 3.) Plaintiff is correct that the Certificate of Need was not officially executed until after the encounter. (Doc. 84-5 at 2.) But even though the Certificate of Need was not issued until after the events occurred, Defendant Gunn could still have objectively believed Plaintiff was having a medical emergency. Neither party has presented evidence that the Certificate of Need was a requirement for this situation to be deemed a medical emergency, and there are additional facts that help contextualize the situation at the time of the encounter.

For example, medical records presented by Defendant show that Plaintiff was under "Emergency Detention due to potential danger of harm to self and/or others" as of 10:15 that morning, before the encounter with Defendant Gunn. (Doc. 74-7 at 15.) Defendant Gunn states he was told to come to Plaintiff's room by the Walden Security guard who stated "something to the effect of" Plaintiff being "[a] combative patient," and "[s]omeone that we're going to have problems with, [s]omeone that is creating problems for us." (Doc. 84-6 at 11.) It is also possible for a reasonable officer to believe that Plaintiff could cause harm based on the statements from the Walden Security guard that Plaintiff was combative. Plaintiff does not dispute Defendant Gunn's assertion that this is how the Walden Security guard framed the situation he was preparing to enter.

Viewing the evidence in the light depicted by the video and through the totality of the circumstances, the Court finds that Plaintiff's actions of repeatedly questioning the nurses, attempting to pull away from the nurses, Defendant Gunn, and the Walden security guard, and stepping over the bed could cause another reasonable officer to believe Plaintiff was experiencing a medical emergency that could potentially cause harm to himself or others. At minimum, Plaintiff's actions placed himself and the four other individuals in the room at risk of harm.

9

Furthermore, Plaintiff was under emergency detention and had been considered "combative" by another security guard. Therefore, the totality of the circumstances also supports a finding that Plaintiff was experiencing a medical emergency.

Because no reasonable jury could find that it was not objectively reasonable for an officer to believe Plaintiff was experiencing a medical emergency that posed an immediate threat to himself and others, the answer to this question is yes.

> ii. **Defendant Gunn could have objectively and reasonably believed some degree of force was necessary to ameliorate the immediate threat.**

The next question is whether some degree of force was necessary to ameliorate the immediate threat. *Estate of Hill*, 853 F.3d at 314. For the purpose of the pending motion, the relevant question is whether Defendant Gunn objectively and reasonably believed that he needed to exercise some degree of force to ameliorate Plaintiff's potential for harming himself or the officials in the room.

Defendant Gunn argues some degree of force was necessary in the instant situation because Plaintiff "was able to pull away from two nurses who were physically larger than he was" and "[t]he nurses in the room did not have control over him." (Doc. 74 at 12.) Defendant Gunn argues he was "attempting to 'assist the nurses and medical staff in making sure that [Plaintiff] calmed down to do what they wanted him to do and to make sure he didn't assault them further." (Doc. 74 at 12.) In sum, Defendant Gunn argues he believed that his presence was needed, and he intervened only when he perceived an assault about to occur." (Doc. 74 at 12.)

Plaintiff responds that his expert, Dr. Jeffrey Pike "has opined that none of [Plaintiff's] actions up to the point that [Defendant Gunn] moved to place hands on [Plaintiff] would lead any reasonable officer to have reasonable suspicion that a crime was about to be committed . . . ." (Doc.

84 at 14.) Additionally, Plaintiff submits that "the video shows there was no immediate threat whatsoever" and "there was no basis for any force to be used on [Plaintiff] by a police officer. . . ." (Doc. 84 at 12.)

Examining the video, it is unclear whether the nurses did lose physical control over Plaintiff. It does appear that at least one of the nurses may have lost control of Plaintiff as he stepped over the bed, but the video does not conclusively establish this. Because the video does not blatantly contradict Plaintiff's version of the events, the Court will take as true Plaintiff's position that the nurses did not lose control over him. *See Hanson*, 736 F. App'x at 527.

However, Plaintiff was becoming increasingly agitated and seemingly confused at the time Defendant Gunn moved in to place hands on Plaintiff. Plaintiff, by this point, was not cooperating with the nurses who were attempting to administer medicine to him. Here, Defendant Gunn argues he moved in to grab Plaintiff to "assist the nurses and the medical staff in making sure that [Plaintiff] calmed down to do what they wanted him to do and to make sure he didn't assault them further, to use some sort of police presence." (Doc. 74-6 at 8.) It is not unreasonable to think that an officer would believe he or she needs to, or at least should, step in to assist before a patient becomes too unruly with medical professionals.

Additionally, Plaintiff admits that he did "pull away" from Defendant Gunn. (Doc. 85 at 5.) Regardless of Plaintiff's reason for pulling away, the fact that he did is established by his testimony and could have led a reasonable officer to believe they needed to use force to restrain him. Therefore, this factor weighs in favor of Defendant Gunn. The answer as to whether it was objectively reasonable for an officer to conclude force was needed is yes.

> iii. **The Court cannot say it was objectively reasonable for Defendant Gunn to believe a strike to the side of the face was the required amount of force here.**

11

The final question for this prong is whether the force used was more than reasonably necessary under the circumstances. Here, the Court is concerned with whether the amount of force Defendant Gunn used was more than any other reasonable officer would have used in this situation.

Defendant Gunn argues the force was not excessive because he "used a single strike that had the effect of gaining compliance and control over [Plaintiff] and he "did not use multiple strikes" or "intermediate weapons." (Doc. 74 at 12.)

Plaintiff argues the force was excessive, in part, because a nurse in the room told Defendant Gunn that the force was excessive. (Doc. 84 at 15.) Following the incident, the nurse who asked Defendant Gunn to leave the room told Defendant Gunn the force was not needed "because you're only supposed to strike when you're in fear of your life, and we were not, and there were for guys bigger than him in there." (Doc. 84 at 15.) The nurse explained to Defendant Gunn that they were "still in control" so force was not necessary. (Doc. 84 at 15.) Plaintiff's position is that "[i]f a person in the room during the incident did not feel threatened and felt as though the force was excessive, clearly there is evidence that supports that finding." (Doc. 84 at 15.)

First the Court must specify the type of force alleged to be excessive. In Plaintiff's deposition, he states he was hit "in the side of the face." (Doc. 81-4 at 8.) Defendant Gunn also admits he "struck him in the face." (Doc. 74-6 at 13.) Medical records from the incident state Defendant Gunn "punched [Plaintiff] in the left side of the head." (Doc. 74-7.) For the purpose of the motion, the Court will accept as true that Defendant Gunn struck Plaintiff in the side of the face.

Defendant Gunn struck plaintiff in the side of the face after he stepped over the bed, but while each nurse did still physically have at least one hand on him. As stated above, it is not

12

unreasonable for an officer to believe that they would need to use force in this situation to help the nurses control Plaintiff.

Having determined some level of force was objectively appropriate, the question becomes what that level of force could have been. The nurse who Plaintiff relies on stated Erlanger Hospital's policy that medical professionals were not to hit patients unless they felt threatened and were in fear of their life. (Doc. 76-3 at 13:07:36–13:08:25.) Defendant Gunn relies on Chattanooga Police Department policy which employs a "use of force continuum." (*See* Doc. 74-8 at 4–5.)

During the deposition of Major Jonathan Chambers, Major Chambers testified "the minute an officer takes action . . . they are immediately considered to be on duty so that they're not working for . . . an outside entity at the time that they are engaged in police activity." (Doc. 84-11 at 7.) Major Chambers stated that the Chattanooga Police Department Policy Manual does not "override" the policies of the entity where the officer is working, but officers are expected to abide by their Chattanooga Police Department training when they "take action." (*Id.* at 6–7.) Major Chambers also stated this was true even though Defendant Gunn was not required to act to ensure the medicine was administered safely. (*See id*.) Plaintiff does not dispute this. Defendant Gunn initially acted by providing his presence in the room, and this continued through the time he decided to use force on Plaintiff. Therefore, the Court finds that the Chattanooga Police Department Policy manual must be considered alongside the statement from the Erlanger Hospital nurse.[5]

---

[5] The Court's ruling here does not mean that Erlanger Hospital no longer had any authority over Defendant Gunn by virtue of his employment with the Chattanooga Police Department. In fact, Erlanger Hospital seemingly showed their disapproval of Defendant Gunn's actions by terminating him following the encounter. (Doc. 76-4 at 24.) However, for the purpose of the

13

The Chattanooga Police Department Policy Manual authorizes officers to "use the minimal amount of force which is reasonably necessary to (1) protect themselves or others, (2) effect an arrest, or (3) maintain control of an arrested person." (Doc. 74-8 at 3.) The use of force continuum allows an officer to respond to "passive resistance"[6] with "soft empty hand control[7]." (*Id.*) The use of force continuum allows an officer to respond to "defensive resistance"[8] with "hard empty hand control & CEW[9]." (*Id.*)

The facts show that Officer Gunn at least struck Plaintiff in the side of the face. Under the Chattanooga Police Department Policy Manual this would be considered a hard empty hand technique. Defendant Gunn argues he used this after Plaintiff "jumped over the bed and broke free from the control of [Defendant] and other medical personal" because Plaintiff was displaying "defensive resistance." (Doc.74 at 14.) However, Plaintiff disputes Defendant's characterization, and the video does not blatantly contradict Plaintiff's version of the events. Accordingly, the Court must view this in the light most favorable to Plaintiff.

---

pending motion, the Court must credit the evidence that Defendant Gunn was also authorized to abide by the Chattanooga Police Department Policy Manual.

[6] Passive resistance is defined as "physical actions that do not attempt to prevent officer's attempt of control, but are not in compliance with an officer's orders or actions." (Doc. 74-8 at 2.)

[7] Soft empty hand techniques is defined as "the subcategory of 'empty hand control' that includes empty hand escort controls, pressure points and come-alongs that have a minimal change of inflicting injury." (Doc. 74-8 at 2.)

[8] Defensive resistance is defined as "physical actions which attempt to prevent officer's control, which are non-threatening in nature." (Doc. 74-8 at 1.)

[9] Hard empty hand techniques is defined as "the subcategory that includes kicks, punches or other striking techniques such as a brachial stun or other strikes to key motor points. (Doc. 74-8 at 2.) The Court need not define CEW as one is not alleged to have been used here.

Here, the Court cannot say that it was objectively reasonable for an officer to believe that striking Plaintiff in the head was the appropriate level of force in response to him stepping over the bed when the nurses and an officer still had hands on him. At minimum, there is a dispute as to whether Plaintiff's conduct of stepping over the bed and pulling away from Defendant Gunn was passive resistance or defensive resistance. Crediting Plaintiff's version of the facts that he stepped over the bed and pulled away from Defendant Gunn because he was in pain, the Court cannot conclusively say that all reasonable officers would consider this defensive resistance such that a hard empty hand technique was warranted. Because this could cause "sufficient disagreement" among members of a jury, the Court cannot say that the answer to this question is no.

> **b. Plaintiff did not have a clearly established right to not be restrained and struck by a police officer when objecting to medical treatment while experiencing a medical emergency that threatened himself or others.**

Even though the Court cannot definitively say Defendant Gunn violated Plaintiff's rights, Plaintiff's claims against Defendant Gunn fail under the second prong of the qualified immunity analysis because Plaintiff cannot show a clearly established right. To be clearly established, a right may not simply be defined at a "high level of generality." *Arrington-Bey,* 858 F.3d at 993. Instead, "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017.) Here, the relevant question is whether a reasonable officer would have been on notice that striking Plaintiff in the back or side of the head would constitute excessive force.

Defendant Gunn argues:

> a reasonable officer would not find [Defendant Gunn's] conduct to be unlawful or that it violated a clearly established right. Respectfully, there is no case law that

15

Case 1:22-cv-00011-CLC-CHS   Document 127   Filed 01/30/24   Page 15 of 19   PageID #: 1567

the Plaintiff can point to that can put Officer Gunn on notice not to use the amount of force he used given the facts and circumstances that occurred.

(Doc. 74 at 16.)

Plaintiff responds, "the punch by [Defendant] to [Plaintiff's] face when he was restrained" violated Plaintiff's clearly established right to be free from such an action. (Doc. 84 at 15.) Plaintiff, relying on a case from another district court, argues it is "clearly established that an officer punching someone in the face unprovoked violates that person's rights." (Doc. 84 at 15) (quoting *Jackson v. Tellado*, 236 F.Supp.3d 636, 663 (E.D.N.Y. 2017.)) Additionally, Plaintiff argues that striking Defendant "simply for being unruly could be sufficient to form a basis for a constitutional claim. (Doc. 84 at 15.)

Of the three cases Plaintiff cited, *Pigram ex rel. Pigram v. Chaudoin* is the only one binding on this Court.[10] Still, the Court finds that *Pigram* is distinguishable from the current case. In *Pigram*, the Court of Appeals for the Sixth Circuit held that the district court correctly denied qualified immunity to an officer who slapped Pigram as he was arresting him. *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006.) Pigram, who suffered from manic depression, cursed at the officer while he was being arrested. *Id.* at 511. In response, the officer slapped Pigram because he had a "smart . . . mouth." *Id.* at 513. Additionally, the officer told Pigram's mother she was "lucky he didn't do more than that." *Id.* The Sixth Circuit reasoned the Officer's decision to slap Pigram "could not reasonably be construed as a means of subduing Pigram" and was not "to protect himself, other officers, or the public." *Id.* By slapping Pigram in

---

[10] Plaintiff's other cited cases, *Jackson v. Tellado* and *Stafford v. Jackson Cnty.* yield the same result as neither case contains a similar enough fact pattern such that Defendant Gunn could be charged with notice. This is particularly true as both *Jackson* and *Stafford* contain officers conducting arrests and not an officer encountering a hospital patient who is dealing with a medical emergency. *See Jackson v. Tellado*, 236 F.Supp.3d 636 (E.D.N.Y. 2017); *see also Stafford v. Jackson Cnty.*, 2017 WL 3332268 (Tenn. Ct. App. Aug. 4, 2017).

16

this situation, the officer violated the clearly established "right of people who pose no safety risk to the police to be free from gratuitous violence during [an] arrest." *Id.* at 513.

Here, the Court finds that *Pigram* is not a case with a "similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey*, 858 F.3d at 993. First, *Pigram* deals with an officer effectuating an arrest and not a situation where an officer encounters an individual experiencing a medical emergency. Next, even viewing the evidence in the light most favorable to Plaintiff, the Court cannot say that Defendant's Gunn's decision to strike Plaintiff was "gratuitous violence" that "could not reasonably be construed as a means of subduing" Defendant. Though Plaintiff and Defendant dispute the level of events, Plaintiff agrees that he did at least pull away from Defendant Gunn as he and the medical professionals sought to restrain him. The Court cannot say that *Pigram* and the current case are similar enough that the officer's actions in *Pigram* should have given Defendant Gunn notice for the situation he encountered. Accordingly, Plaintiff cannot show he possessed a clearly established right that Defendant Gunn violated. Defendant's Gunn's motion for summary judgment will be **GRANTED IN PART** as to Plaintiff's § 1983 claim for use of excessive force. Plaintiff's claim for use of excessive force will be **DISMISSED**.

    B.    **State Law Claims**

        1.    **Malicious Prosecution**

Defendant Gunn also argues summary judgment is proper as to Plaintiff's claim for malicious harassment. To establish a claim of malicious harassment, Plaintiff must demonstrate that Defendant "intentionally intimidated the plaintiff from freely exercising a constitutional right [and] the plaintiff must also demonstrate that the perpetrator was motivated by the victim's race,

color, religion, ancestry or national origin." *Davidson v. Bredesen*, 330 S.W.3d 876, 889 (Tenn. Ct. App. 2009).

Plaintiff's malicious harassment claim alleges Defendant Gunn:

acted maliciously and with ill will, hatred and spite, and unlawfully intimidated the Plaintiff, from the free exercise or enjoyment of his constitutional rights including his First, Fourth, Eighth, and Fourteenth amendment rights and the right to liberty, freedom from punishment and freedom of movement under the United States Constitution, as well as rights under the Tennessee Constitution namely, his rights pursuant to Article I, Sec. 7, 8, 13, 16, and 35, by injuring him, and/or threatening to injure him and/or coercing him.

(Doc. 1 at 10.)

Defendant Gunn argues summary judgment is proper because Plaintiff has "offered no proof that [Defendant Gunn] acted with specific intent to harass based on race, color, ancestry, religion or national origin. (Doc. 74 at 19.)

Plaintiff's response does not specifically address Defendant Gunn's argument. However, the Court agrees with Defendant that Plaintiff has presented no evidence that, assuming Defendant Gunn did violate Plaintiff's constitutional rights, he was motivated by Plaintiff's "race, color, ancestry, religion, or national origin." Accordingly, Defendant Gunn's motion for summary judgment will be **GRANTED IN PART** as to Plaintiff's claim for malicious harassment. Plaintiff's claim for malicious harassment will be **DISMISSED**.

### 2. Common Law Assault and Battery

Plaintiff's final claim against Defendant Gunn is for common law assault and battery. Plaintiff alleges Defendant Gunn "intentionally, unlawfully, and harmfully made physical contact with the Plaintiff," "proximately caused injury to the Plaintiff," and "intentionally attempted to harm, or to frighten, Plaintiff." (Doc. 1. at 11.)

18

Case 1:22-cv-00011-CLC-CHS   Document 127   Filed 01/30/24   Page 18 of 19   PageID #: 1570

Defendant argues summary judgment is proper because he "used an appropriate level of force that was not excessive and that also was pursuant to Chattanooga Police Department policy." (Doc. 74 at 19–20.)

Plaintiff argues Defendant Gunn "applied excessive force" when he "unnecessarily twisted [Plaintiff's] harm behind his back" and when he "punched [Plaintiff] in the face." (Doc. 84 at 19.)

As noted above, a reasonable jury could reach different conclusions on whether the amount of force used here was excessive. Accordingly, summary judgment would be inappropriate as to Plaintiff's claim for common law assault and battery. Defendant Gunn's motion for summary judgment will be **DENIED IN PART** as to Plaintiff's claim for common law assault and battery.

## IV.    CONCLUSION

Because Plaintiff cannot show he possessed a clearly established right that Defendant Gunn violated, Defendant Gunn's motion for summary judgement will be **GRANTED IN PART** as to Plaintiff's § 1983 claim for use of excessive force. Additionally, Defendant Gunn's motion for summary judgment will be **GRANTED IN PART** as to Plaintiff's claim for malicious harassment because Plaintiff has not shown Defendant Gunn was motivated by his race, color, ancestry, religion, or national origin. Finally, Defendant Gunn's motion for summary judgment will be **DENIED IN PART** as to Plaintiff's claim for common law assault and battery because there is a genuine issue of material fact as to whether Plaintiff used excessive force in restraining Plaintiff.

SO ORDERED.

ENTER.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**