UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MILES GUPTILL, | ) |
|     *Plaintiff*, | ) |
| | ) Case No.: 1:22-cv-11-CLC-CHS |
| v. | ) |
| | ) Judge Collier |
| CITY OF CHATTANOOGA, and | ) |
| OFFICER JOEL GUNN (Individually | ) |
| and Official Capacity), | ) |
|     *Defendants*. | ) |

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment by Defendant City of Chattanooga ("City of Chattanooga"). (Doc. 76.) Plaintiff, Miles Guptill ("Plaintiff"), has responded. (Doc. 81.) Defendant City of Chattanooga has replied. (Doc. 92.) This matter is ripe for review.

### I.    BACKGROUND

On January 11, 2021, Plaintiff went to Erlanger Hospital in East Ridge, TN to receive treatment for ongoing mental health issues. (Doc. 82 at 1.) Prior to January 11, 2021, Plaintiff was diagnosed with schizophrenia, chronic depression, bipolar disorder and post traumatic syndrome disorder. (Doc. 82 at 1–2.) The relevant altercation was captured through footage from Officer Gunn's body camera. The parties dispute many of the facts of the encounter. Because there is video footage of the event, the court must view the facts "in the light depicted by the videotape." *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012). However, where the facts of the video recording do not blatantly contradict Plaintiff's "entire version of the events' in material respects to each claim," the Court must still view the evidence in the light most favorable

to Plaintiff, the nonmovant. *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 527 (6th. Cir. 2018) (quoting *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011).

The video begins with Plaintiff sitting on a bed inside Erlanger Hospital. (Doc. 76-3 at 13:00:03.) At this point, a nurse is attempting to explain to Plaintiff that a doctor has ordered medication that Plaintiff must take because of an "acute medical change."[1] ( *Id.* 13:00:07–13:00:09.) The nurse tells Plaintiff that his "mind is not working right" so he is not in a position to make decision regarding his medications, but Plaintiff continues to express opposition[2] to taking the medication. (*Id.* at 13:00:18–13:00:43.) A second nurse enters the room and attempts to explain why Plaintiff has to take the medication. (*Id.* at 13:00:45–13:01:00.) The two nurses, now both in the room with Plaintiff, move towards him, presumably to administer the medication to Plaintiff through a syringe. (*Id.* at 13:00:05–13:00:10.) Defendant Gunn and a Walden Security guard enter the room following the nurses.

At the time Defendant Gunn entered the room, one nurse had Plaintiff restrained as the other continued attempting to explain to Plaintiff why he had to take the medication. (*Id.* at 13:01:10.) Defendant Gunn and the Walden Security guard continued to move closer to Plaintiff, and all four men[3] attempted to physically restrain Plaintiff. (*Id.* at 13:01:12–13:01:19.) Plaintiff's left arm began to tense up as he continued expressing opposition to taking the shot. (*Id.* at 13:01:19–13:01:24.) Plaintiff then stepped over the bed to the other side of the room. (*Id.* at

---

[1] According to Plaintiff, he was hesitant to take the medicine because he "stopped taking drugs about a week prior to checking himself into the hospital and was attempting to avoid taking further drugs." (Doc. 84 at 2.)

[2] Plaintiff denies refusing to take the medicine. Even after viewing the video, the Court cannot say that Plaintiff's hesitancy was outright refusal. Accordingly, the Court will accept Plaintiff's characterization as true.

[3] Both nurses in the room were also male.

2

13:01:26–13:01:29.) Plaintiff argues he stepped over the bed in order to "provide relief to his shoulder pain caused by his arm being twisted behind his back." (*Id.* at 13:01:27–13:01:29; Doc. 85 at 7.) When Plaintiff's feet touched the ground again, Defendant Gunn struck Plaintiff in the head and attempted to hold his head down. (Doc. 76-3 at 13:01:28–13:01:30.) One of the nurses told Defendant Gunn "don't do that" and to "step out" of the room. (*Id.* at 13:01:30–13:01:32.) Defendant Gunn continued attempting to restrain Plaintiff by alternating a hand on Plaintiff's neck and left arm. (*Id.* at 13:01:32–13:01:44.) Ultimately, Defendant Gunn left the room and began walking the hall outside of the room. Defendant Gunn can be heard telling someone outside the room "I punched him one time . . . ." (*Id.* at 13:02:04–13:04:06.) Plaintiff can be heard from inside the room questioning why Defendant Gunn hit him in the head and stating that he wanted the incident reported. (*Id.* at 13:01:58, 13:02:11–13:03:29.) Defendant Gunn then explains to another medical professional outside of the room that Defendant was being "combative" and he "hit him one time . . . to get him to stop resisting." (*Id.* at 13:03:40–13:03:50.) Defendant Gunn went to his vehicle to retrieve a notebook and returned to talk to the nurse who asked him to leave the room. Officer Gunn asked the nurse why he had a "problem" with Gunn's actions and the nurse stated it was hospital policy to "only strike if you fear for your life." (13:07:26–13:08:25.) The officer also stated that Plaintiff was restrained and that they were still in control. (13:08:05–13:08:10.).

Following the encounter, Defendant City of Chattanooga conducted an investigation. (Doc. 82 at 8.) Plaintiff requested to speak with a supervisor in the field. (*Id.*) A supervisor responded by submitting an inquiry referral, and the case was assigned to an internal affairs investigator. (*Id.*) Defendant City of Chattanooga submits the internal affairs investigator "would typically interview the complainant as well as any other witnesses and fill out a report of

3

investigation to outline everything that was gathered during their investigation." (*Id.*) The report then goes to the commander of the officer of internal affairs. (*Id.*)

After the report went to the commander of the officer of internal affairs, the commander of professional standards reviewed the "totality of the case." (*Id.* at 9.) The commander of professional standards recommended that the "allegations of use of force, no injury, improper application, or use of force injury could be sustained against [Defendant Gunn]." (*Id.*) This recommendation went to the Assistant Chief who also recommended the allegations against Defendant Gunn be sustained. (*Id.*) Following the Assistant Chief, the Deputy Chief also reviewed the case and wrote a letter of recommendation that the allegations against Defendant Gunn should be sustained. (*Id.*)

The facts of the case were then presented to the Police Advisory Review Committee. (*Id.*) Four members of the committee recommended that Defendant Gunn be exonerated because his use of force was in line with policy. (*Id.*) Four members of the committee reviewed the case but felt the use of force was not within policy. (*Id.*)

After the Police Advisory Review Committee made its recommendation, Deputy Chief Tucker, acting as interim Chief of Police, held a disciplinary hearing regarding Defendant Gunn. (*Id.* at 8–9.) Chief Tucker determined that Plaintiff displayed defensive resistance by grabbing Defendant Gunn's hand and Defendant Gunn delivered a strike so Plaintiff would let go. (*Id.* at 9.) Ultimately, Chief Tucker concluded that "there was not a preponderance of evidence that a Chattanooga Police Department policy was violated." (*Id.*) Chief Tucker then sent a letter to the Police Advisory Review Committee to explain his final determination.[4] (*Id.*)

---

[4] The parties submit that Chief Tucker was required to notify the Police Advisory Review Committee if there was a difference between their recommendation and his final decision as Chief of Police.

Plaintiff filed his 42 U.S.C. § 1983 complaint against Defendants Gunn and the City of Chattanooga on January 11, 2022. (Doc. 1.) Plaintiff asserted federal claims based on *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) for failure to train, failure to supervise, and a custom of tolerance of federal right violations against Defendant City of Chattanooga. (*Id.* at 6–10.) Plaintiff also asserted a state law claim for malicious harassment, in part, based upon the theory of respondeat superior. (*Id.* at 10.)

Defendant City of Chattanooga moved for summary judgment on September 15, 2023. (Doc. 76.) Plaintiff responded on October 20, 2023. (Doc. 81.) Defendant City of Chattanooga replied on November 3, 2023. (Doc. 92.) This matter is now ripe for review.

## II. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). In resolving a motion for summary judgment the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . ." *Celotex Corp.*, 477 U.S. at 323. "When reviewing a motion for summary judgment, the court generally must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). But where there is a videotape capturing the events in question, the court must view the facts "in the light depicted by the videotape." *Green v. Throckmorton*, 681 F.3d 853, 859

(6th Cir. 2012). "[W]here the video does not tell the whole story in a material respect, or 'reasonable jurors could interpret the video evidence differently,' summary judgment is not appropriate." *Hanson,* 736 F. App'x at 527. "The ultimate question, then, is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [the moving] party must prevail as a matter of law. *Id.*

### III. DISCUSSION

Defendant City of Chattanooga moves for summary judgment as to Plaintiff's federal claims based on *Monell*. Defendant City of Chattanooga also moves for summary judgment as to Plaintiff's state law claim for malicious harassment. Plaintiff argues summary judgement is improper because there are genuine issues of material fact that must go to a jury to determine. The Court will begin by addressing Defendant City of Chattanooga's motion as it relates to Plaintiff's federal *Monell* claims. Then, the Court will address Plaintiff's state law claim for malicious harassment.

#### A. *Monell* Liability

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga¸* 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell* 436 U.S. at 694). "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Id.* These avenues include "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* Here, Plaintiff appears to allege violations based on failure to train, failure to

6

supervise, and a custom of tolerance of federal right violations. The Court will address each in turn.

### 1. Failure to Train

Defendant City of Chattanooga first argues summary judgment is proper as to Plaintiff's claim that it failed to properly train Defendant Gunn on the appropriate use of force when encountering mental patients.[5]

"The Supreme Court has held that 'the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Amerson v. Waterford Tp.*, 562 F. App'x 484, 490 (6th Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). To prevail on a claim for failure to train, Plaintiff must prove that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Marcilis v. Redford Tp.*, 693 F.3d 589, 605 (6th Cir. 2012). Proving deliberate indifference for failure to train requires plaintiffs to "show prior instances of unconstitutional conduct demonstrating that the [Defendant] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.*

Defendant City of Chattanooga argues:

> The record lacks evidence of a constitutional violation based on the training provided by the City to [Defendant Gunn] . . . [t]o the contrary, the record establishes, through the affidavits of Ronald Zirk that the City properly and thoroughly trains its police officers, including [Defendant Gunn], on proper police tactics, such as use of force.

---

[5] Having already determined Defendant Gunn is entitled to qualified immunity on Plaintiff's § 1983 excessive force claim (Doc. 128), the Court's analysis here will only focus on any potential liability related to Defendant City of Chattanooga for failing to properly train officers.

7

(Doc. 77 at 15.)

Plaintiff responds, "[Defendant Gunn's] actions were a result of [Defendant City of Chattanooga's] failure to train him properly and failure to have defined standards for what is appropriate regarding the interplay between Policies OPS-44 and ADM-05."[6] (Doc. 81 at 16.) Additionally, Plaintiff argues he "has presented enough evidence for the jury to make a finding that the City of Chattanooga's training . . . was inadequate to expect [Defendant Gunn] to make correct decisions regarding the use of force with mental patients at Erlanger East . . . (*Id.*)

Here, the Court finds summary judgment is proper because Plaintiff cannot show Defendant City of Chattanooga was deliberately indifferent to a known history of abuse. Even viewing the evidence in the light most favorable to Plaintiff, including that Defendant City of Chattanooga was allegedly deficient in training Defendant Gunn, Plaintiff has not shown "prior instances of unconstitutional conduct demonstrating that the [Defendant] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Marcilis*, 693 F.3d at 605.

Plaintiff has not shown Defendant City of Chattanooga was aware of previous instances of officers "abusing" mental health patients such that it should have known its training was deficient. During his deposition, Defendant Gunn does state that he has previously had to use force on patients at Erlanger Hospital—some of whom might have been mental health patients.[7] (Doc. 76-

---

[6] OPS-44 is the Chattanooga Police Department Policy Manual for engaging individuals with mental health ailments. ADM-O5 is the Chattanooga Policy Department's Policy Manual which guides officers on the use of force. (*See* Docs. 76-2 and 78-1.)

[7] The Court is not expressing a finding as to whether the previous situations where Defendant Gunn used force were or were not excessive. Officers are commonly required to make decisions based on split second judgments and this must be judged "from the perspective of a

8

4 at 35.) However, Defendant Gunn also states he was not disciplined for these situations. (*Id.*) Accordingly, Defendant Gunn's prior uses of force would not have clearly put Defendant City of Chattanooga on notice of inadequacies in its polices. Additionally, Plaintiff has not pointed to instances of alleged excessive force against mental health patients by other Chattanooga Police Department officers such that Defendant City of Chattanooga should be charged with notice. In the absence of evidence that Defendant City of Chattanooga was on notice that its policies were inadequate and led to mental health patients being abused, the Court cannot say that Defendant City of Chattanooga was deliberately indifferent. Defendant City of Chattanooga's motion for summary judgment will be **GRANTED** as to Plaintiff's claim of *Monell* liability for failure to train. Plaintiff's claim based on failure to train will be **DISMISSED WITH PREJUDICE**.

### 2. Failure to Supervise

The Court of Appeals for the Sixth Circuit has held that claims for failure to supervise "must meet the rigorous standards of culpability and causation that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its facially lawful policies." *Amerson*, 562 F. App'x at 491–92 (quoting *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). To sustain a failure to supervise claim a plaintiff "must show that the city acted with 'deliberate indifference' to the risk of [the constitutional violation] and that its deliberate indifference was the 'moving force' behind the assault." *Id.*

Plaintiff's complaint alleges Defendant City of Chattanooga:

> did not provide adequate supervision for the tasks performed by [Defendant Gunn]. Without limitation, [Defendant Gunn] was not properly supervised with regard to the detention of Plaintiff and the use of force and proper detention procedure for involuntarily committed mental health patients. The inadequacy of supervision was

---

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Pigram ex rel. Pigram v. Chaudoin*¸ 199 F. App'x 509, 512 (quoting *Graham v. Connor*, 490 U.S. 386 (1989)).

9

the result of the municipality's deliberate indifference to the danger associated [with] excessive use of force and improper arrest procedure.

(Doc. 1 at 8.) Plaintiff also alleges Defendant City of Chattanooga's failure "was so persistent and widespread that it constituted . . . an official policy and action, or its failure to supervise was obvious[s] and foreseeably lead to a constitutional deprivation as alleged." (*Id.* at 8–9.)

Defendant City of Chattanooga argues summary judgment is proper because the record "is devoid of factual evidence that the City was deliberately indifferent and failed to properly supervise its police officers." (Doc. 77 at 15.) Additionally, Defendant City of Chattanooga cites the Sixth Circuit case *Stemler v. City of Florence* for the proposition that there can be no § 1983 liability without evidence of deliberate indifference to the consequences of improper supervision. (*Id.*) *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997.)

Plaintiff's failure to supervise claim must also fail. Here, Plaintiff has also failed to show that Defendant City of Chattanooga was deliberately indifferent to the dangers of excessive force. Again, even assuming Defendant City of Chattanooga was inadequate in supervising Defendant Gunn, Plaintiff has not shown this rises to the "stringent standard" that Defendant City of Chattanooga "disregarded a known or obvious consequence of this action." *Stemler*, 126 F.3d at 856 (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 409 (1997)). This is especially true where, as here, Plaintiff has only presented one officer and one discrete situation that is alleged to have fallen below a certain standard. Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim for *Monell* liability based on failure to supervise is **GRANTED**. Plaintiff's claim based on failure to supervise will be **DISMISSED WITH PREJUDICE**.

### 3. Custom of Tolerance of Federal Right Violations

Defendant City of Chattanooga's final theory for summary judgment on Plaintiff's *Monell* claims argues that there has been no ratification by a policymaker such that it should be charged with allowing a custom of tolerance of federal right violations.

"[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "However, the municipality is liable for an official's unconstitutional action only when the official is the one who has the 'final authority to establish municipal policy with respect to the action ordered.'" *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). "The fact that a particular official—even policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 482. "Officials can derive their authority to make final policy from customs or legislative enactments, or such authority can be delegated to them by other officials who have final policymaking authority." *Feliciano*, 988 F.2d at 655. "Whether a given individual is such a 'policymaker' for purposes of § 1983 liability is a question of state law." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005.) As it relates to the investigation, the parties agree that Chief Tucker made the final determination that the allegations against Defendant Gunn should not be sustained. Therefore, Defendant City of Chattanooga can be liable if (1) Chief Tucker had the authority under state law to make final policy regarding officer discipline or (2) a final policymaker for Defendant City of Chattanooga ratified Chief Tucker's actions. *See Feliciano*, 988 F.2d at 655.

Defendant's motion does not fully explain its basis for summary judgment on this theory. However, Defendant appears to argue that Plaintiff would not be able to satisfy either method.

In responding to Defendant's motion, Plaintiff argues Defendant City of Chattanooga ratified Defendant Gunn's conduct when "Chief Tucker with the city, concluded the charge brought against [Defendant Gunn] was 'not sustained.'" (Doc. 81 at 18.) Plaintiff argues "Chief Tucker held the final authority for the City regarding [Defendant Gunn's] actions [and] [Defendant City of Chattanooga's] disposition of 'not sustained' was a ratification of [Defendant Gunn's] unconstitutional excessive use of force." (*Id.*)

Defendant City of Chattanooga replies that Plaintiff has not shown that any alleged federal right violation occurred because of a municipal custom or policy. (Doc. 92 at 5.)

Chief Tucker may or may not be a final decisionmaker depending upon the particular facts and circumstances. However, what is clear here is that Chief Tucker in no way authorized or signaled authorization of violations of federal rights. Exerting his authority as Chief of Police, Chief Tucker reviewed an allegation of excessive force by an officer and issued a determination. Plaintiff's allegations against Chief Tucker would have been stronger had he shown Chief Tucker repeatedly found officers to not be liable after the Police Advisory Review Committee recommended that the charges against an officer be sustained. Here, Plaintiff has only presented the decision made regarding Defendant Gunn as evidence that Chief Tucker ratified a custom of violating federal rights. This sole occurrence cannot be the basis to hold a municipality liable for a custom or policy violation under *Monell*.

In the absence of evidence of a City of Chattanooga custom or policy, the Court finds that Defendant City of Chattanooga is not liable under *Monell* and its progeny. Defendant City of Chattanooga's motion for summary judgment will be **GRANTED** as to Plaintiff's claims for *Monell* liability based on a custom of tolerance of federal right violations. Plaintiff's claims for

*Monell* liability based on failure to train, failure to supervise, and a custom of tolerance of federal right violations will be **DISMISSED WITH PREJUDICE**.

    **B.**    **State Law Claims**

Plaintiff has alleged a state law claim against Defendant City of Chattanooga for malicious harassment. The Court "may decline to exercise supplemental jurisdiction over a claim . . . if (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Here, the Court will dismiss Plaintiff's claims based on federal law. As there will be no remaining federal question, the Court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's case which is now composed exclusively of a state law claim. Plaintiff's claim against Defendant City of Chattanooga for malicious harassment will be **DISMISSED WITHOUT PREJUDICE**.

## IV.    CONCLUSION

For the reasons discussed above, Defendant City of Chattanooga's motion for summary judgment will be **GRANTED** as to Plaintiff's claims of *Monell* liability based on failure to train, failure to supervise, and a custom of tolerance of federal right violations. Plaintiff's *Monell* claims will be **DISMISSED WITH PREJUDICE**. Because no federal question will remain, the Court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. Plaintiff's state law claim against Defendant City of Chattanooga for malicious harassment will be **DISMISSED WITHOUT PREJUDICE**.

    **SO ORDERED.**

    **ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**